UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

THOMAS HICKS,

                Petitioner,                Civil No. 08-12880-BC
                                                    Honorable Thomas L. Ludington

v.

NICK LUDWICK,

                Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY

Petitioner Thomas Hicks filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on July 7, 2008. Petitioner was convicted after a jury trial in St. Clair County Circuit Court of two counts of second-degree criminal sexual conduct, Mich. Comp. Laws § 750.520c(1)(a). Petitioner now challenges those convictions on the grounds that the conviction was imposed in violation of the Constitution. For the reasons explained below, the petition will be denied.

I.

Petitioner's convictions arise from the sexual assault of Morgan Jackson, a friend of Petitioner's daughter.

Gloria Ferry, Morgan's mother, testified that her daughter often played with Shelby Hicks, Petitioner's daughter. In August 2003, Morgan, who was twelve years old at the time of the trial, slept over Shelby's house. Ferry testified that, the following day, Morgan was uncharacteristically withdrawn. A few days later, on August 12, 2003, Morgan told Ferry that she had been assaulted by Petitioner. Ferry then called Pam Hicks, who is Shelby's mother and Petitioner's ex-wife, and the State Police. The next day, Ferry, Morgan, Shelby, Pam Hicks, and Elizabeth Pomeroy

(Morgan's half-sister) traveled to the State Police post, where they were directed to Care House in Mount Clemens. Morgan, Shelby, and Pomeroy were interviewed at the Care House. Ferry and Pam Hicks were not permitted to be present during the interviews.

Pamela Hicks testified that she is Shelby Hicks' and Elizabeth Pomeroy's mother. She was married to Petitioner from 1993 until they divorced in 2000. At the time of trial, Shelby was nine years old and Elizabeth fifteen years old. Pamela Hicks testified that, after she received a phone call from Morgan's mother, she discussed the call with her older daughters Alisha and Elizabeth Pomeroy. Elizabeth became upset and told her mother she had also been assaulted by Petitioner.

Anne Venet testified that she works at Care House, a child advocacy center, in Mount Clemens, Michigan. She is a forensic interviewer, that is, she interviews children who have allegedly suffered sexual abuse. When she interviews children, law enforcement officers watch the interview on a closed circuit television in a different part of the building. She testified that, on August 25, 2003, she interviewed Shelby Hicks and Morgan Jackson, and that the interviews were videotaped.

Morgan Jackson testified that, in early August 2003, she spent that night with Shelby Hicks at Petitioner's house. Before going to Petitioner's house, she, Shelby and Petitioner went to Petitioner's friend's house to swim. While swimming, Petitioner lifted her up several times and threw her into the water. After he threw her into the water, she felt Petitioner's "privates" between her legs. She also testified that his "privates" touched her when he was carrying her around the pool. Later that evening, she and Shelby went to bed in Shelby's room. They both slept in the same bed. Morgan testified that, after she had fallen asleep, she was awakened by Petitioner leaning over her. She testified that she felt his "private" on her bottom. He continued to lean over her bed in that

manner for approximately one minute, and then Petitioner left the room. He returned sometime later and she again felt his penis on her bottom. Morgan testified that she attempted to wake Shelby by kicking her, but Shelby did not wake up. Petitioner left, but again returned a short time later. This time Petitioner "asked for a massage." While Petitioner was rubbing Morgan's shoulders, Morgan testified that Petitioner's penis touched her between her legs.

Morgan further testified that the following morning, after she took a shower, she was in Shelby's room wearing only a towel, when Petitioner entered the room. Petitioner was wearing a pair of shorts that was ripped in the genital area. Petitioner combed Morgan's hair while she sat on the bed. She testified that this made her uncomfortable.

Elizabeth Pomeroy testified that her mother was once married to Petitioner. One night, she was sleeping between her mother and Petitioner when she felt Petitioner's penis in between her legs. She testified that another time, when she was swimming in the pool at her home, Petitioner asked her to come by him. He placed Elizabeth on his lap and she felt his penis between her legs. Elizabeth testified to several additional instances when Petitioner placed his penis between her legs. She did not tell her mother about the incidents until her mother approached her in August 2003.

Michigan State Trooper John Sholtz testified that he began an investigation into possible criminal sexual conduct by Petitioner on August 12, 2003. He observed the Care House interviews by closed circuit television. Sholtz interviewed Petitioner regarding the investigation. Petitioner told Sholtz that, on the evening when Morgan slept at his home, Morgan and Shelby shared a bedroom that was connected to his bedroom by a bathroom. Petitioner stated that he checked on the girls twice that night. The first time, he was naked, but stated that he checked on them from the bathroom and did not enter the bedroom. The second time, he had a towel around his waist.

Petitioner also told Sholtz that he slept naked while Elizabeth was in his bed. He stated that he always slept naked and remained so when Elizabeth would come into the bed. Petitioner denied rubbing against Elizabeth when she was in the bed, but acknowledged that he was a heavy drinker and frequently blacked out.

The tape of Morgan's Care House interview was admitted into evidence and played for the jury.

Petitioner testified in his own defense. He testified that, on August 2, 2003, he went to a friend's pool with Shelby and Morgan. He stated that he tossed Shelby and Morgan into the water while in the pool, but denied touching Morgan inappropriately. He testified that that evening, the girls went to bed at approximately 10:00 p.m. He was in the bathroom that adjoined the two bedrooms when he heard a very loud bang coming from Shelby's room. Petitioner, who was naked, wrapped a towel around himself and looked into the bedroom. He noticed that the girls were sleeping close to the edge of the bed. He testified that he reached down to move Shelby and in doing so, lost his balance and his forearm touched Morgan. He touched Morgan's shoulder to indicate that he was sorry. He then left the bedroom. He returned to his room and put on a pair of underwear.

Petitioner testified that he then went to sleep. He was awakened by another loud bang coming from Shelby's room. He went into Shelby's room to check on the girls and again found the girls pressed against a desk that was on one side of the bed. He moved Shelby over to one side of the bed. He denied touching Morgan inappropriately while she was in bed.

II.

Following a jury trial in St. Clair County Circuit Court, Petitioner was convicted of two counts of second-degree criminal sexual conduct. On May 9, 2005, Petitioner was sentenced to

eight to 30 years' imprisonment on each count, to be served concurrently.

Petitioner filed an appeal of right in the Michigan Court of Appeals raising the following claims:

    I.      The trial court clearly abused its discretion in admitting the testimony of Elizabeth Pomeroy under M.R.E. 404(b) when the facts were not similar to the charges and Elizabeth Pomeroy lacked sufficient memory to testify as to the events she alleged.

    II.     The trial court clearly abused its discretion in admitting the care house interview of Morgan Jackson where there was no allegation of recent fabrication and the unsworn statements were inconsistent with trial testimony.

    III.    The trial court failed to properly exercise its discretion when scoring P.R.V. 2 by failing to inquire into the facts of the prior conviction in Florida to determine whether it was a felony and by increasing OV 10 by scoring predatory conduct.

He filed additional claims in a supplemental brief:

    I.      Appellant was denied his Sixth Amendment right to confront witnesses against him.

    II.     Prosecutorial misconduct and failure to disclose tangible evidence prior to trial.

    III.    There was a variance/constructive amendment to the information resulting in reversible error.

    IV.    Appellant was sentenced upon factors neither admitted nor proved to a jury or factfinder beyond a reasonable doubt.

The Michigan Court of Appeals affirmed Petitioner's convictions. *People v. Hicks*, No. 262567, 2007 WL 101228 (Mich. Ct. App. Jan. 16, 2007).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims raised in the Michigan Court of Appeals. *People v. Hicks*, 734 N.W.2d 214 (Mich. July 18, 2007) (Table). The Michigan Supreme Court denied Petitioner's application for leave to appeal

in a one sentence order. Justices Michael F. Cavanagh and Marilyn J. Kelly dissented, noting that they would have granted Petitioner leave to appeal.

Petitioner then filed the pending petition for a writ of habeas corpus. He raises the following claims:

> I. The Michigan Courts entered a decision that was contrary to *Chapman v. California*, in finding that the admission of highly and unfairly prejudicial inadmissible evidence was harmless.
>
> II. The Michigan Courts entered a decision that was contrary to *Maryland v. Craig* by ruling that Mr. Hicks' right to confrontation was not violated.
>
> III. The Michigan Courts entered a decision that was contrary to *Townsend v. Burke* by sentencing Mr. Hicks based upon false information.

### III.

Review of the petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 ("AEDPA"). The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at

a result different from [this] precedent.' " *Mitchell v. Esparza*, 540 U.S. 12, 15–16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)). "[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413).

"In order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520–21 (citations omitted); *see also Williams*, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 789 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

> Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Id.* at 786-87 (internal quotation omitted).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams*, 529 U.S. at 412. Section 2254(d) "does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of

[Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). "[W]hile the principles of 'clearly established law' are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)).

A federal habeas court must presume the correctness of state court factual determinations. See 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

## IV.

### A.

Petitioner argues that his right to confront witnesses and his right to due process were violated by the admission of a videotape of the Morgan Jackson's Care House interview. The videotape was admitted during the prosecution's presentation of evidence, to rebut Petitioner's attacks on the witness's credibility, and replayed during juror deliberations. Petitioner also argues that the first time the videotape was played it was of a very low-sound quality and the second time it was played the sound quality was improved. Thus, by replaying the clearer-sounding tape after the close of proofs, Petitioner argues the Court admitted additional proofs after the prosecution rested.

The Confrontation Clause of the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. "The Sixth Amendment's right of an accused to confront the witnesses against him is

. . . a fundamental right and is made obligatory on the States by the Fourteenth Amendment." *Pointer v. Texas*, 380 U.S. 400, 403 (1965). The rights of confrontation and cross-examination "have ancient roots" which the "Court has been zealous to protect . . . from erosion." *Id.* at 404-05 (internal quotation omitted). The right to a trial by jury is predicated upon the belief "'that the 'evidence developed' against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross examination, and of counsel.'" *Id.* at 405, (*quoting Turner v. State of Louisiana*, 379 U.S. 466, 472-73 (1965)).

In *Crawford v. Washington*, 541 U.S. 36, 68 (2004), the Supreme Court held that out-of-court statements that are testimonial in nature are barred by the Confrontation Clause unless the witness is unavailable and the defendant had a prior opportunity for cross-examination regardless of whether the trial court finds the statements to be reliable. However, "when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements . . . The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it." *Crawford,* 541 U.S. at 59, n.9.

Morgan testified at trial. The videotape was admitted after she testified, but defense counsel did not seek to have Morgan recalled so that he could cross-examine her regarding the videotape. Because Morgan testified at trial, Petitioner's rights under the Confrontation Clause and the Due Process Clause were not implicated. *See Maddox v. Warden, Ohio State Penitentiary*, 2010 WL 5393906 * 15 (S.D. Ohio Aug. 13, 2010) (holding that Confrontation Clause was not violated by admission of victim's videotaped testimony because victim testified at trial and was subject to unrestricted cross-examination); *Higgins v. Addison*, 2010 WL 1329924 (N.D. Okla. March 30, 2010) (same).

Petitioner also argues that the sound quality of the tape was improved when the tape was replayed for the jury during deliberations. Consequently, he argues that he did not have the opportunity to cross-examine Morgan regarding the statements that he previously had been unable to hear. The trial court and Michigan Court of Appeals each made a factual finding that the tape played during deliberations was the same tape played during trial. The Michigan Court of Appeals held that any differences in sound quality could be attributed to the use of different equipment when the tape was played a second time. The Michigan Court of Appeals found that Petitioner was not denied the right to cross-examine Morgan because the defense was provided with a copy of the tape prior to trial and was given sufficient opportunity to cross-examine her at trial. Defense counsel did not file a pretrial motion regarding the tape quality. He was in possession of the tape prior to cross-examining Jackson and did not seek to recall her once the tape was played. Petitioner has not identified any specific areas on which he was unable to cross-examine Morgan because of the tape's sound quality. Thus, Petitioner has not demonstrated that the was denied the *opportunity* to cross-examine Jackson. The Michigan Court of Appeals opinion is not contrary to or an unreasonable application of Supreme Court precedent.

B.

Petitioner also contends that the Michigan Court of Appeals' entered a decision that was contrary to *Chapman v. California*, 386 U.S. 18 (1967), when it decided that, although the trial court erred in admitting the videotape of the victim's interview at the Care House, the error was harmless. In *Chapman*, the Supreme Court concluded that "the standard for determining whether a conviction must be set aside because of federal constitutional error is whether the error 'was harmless beyond a reasonable doubt.' " *Id.* at 24. Petitioner contends that the Michigan Court of Appeals applied a

more lenient standard of review, asking whether or not the error "was outcome determinative." *See Hicks*, No. 262567, 2007 WL 101228, at *4 (citing Mich. R. Evid. 103(a); *People v. Lukity*, 596 N.W.2d 607, 612–13 (1999)). He further contends that use of the "outcome determinative" standard was contrary to clearly established Supreme Court precedent.

The Michigan Court of Appeals held that the tape was not properly admitted under the Michigan Rules of Evidence because it was hearsay which was introduced to rehabilitate a witness following cross examination. *See Hicks*, No. 262567, 2007 WL 101228, at *3 (citing Mich. R. Evid. 801(d)(1)(B)). According to the Michigan Court of Appeals, such evidence is only admissible if it is "consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive." *Id.* (quotations omitted). The Michigan Court of Appeals did not hold that admission of the taped testimony violated Petitioner's federal constitutional rights.

It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475 (1991). A federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. *Id.* "Errors in the application of state law, especially rulings regarding the admission or exclusion of evidence, are usually not to be questioned in a federal habeas corpus proceeding." *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir.2000). Thus, Petitioner's claim that the state court applied the incorrect standard in its harmless error analysis with respect to the improper admission of certain evidence under the Michigan Rules of Evidence is not reviewable under § 2254.

Perhaps more importantly, as discussed in Part IV.A., there was no constitutional error in admitting the videotaped interview. Admission of the videotape did not violate the Confrontation Clause because Petitioner had an opportunity to cross examine the witness, nor has Petitioner demonstrated that admission of the tape was such a fundamental error that it implicated the Due Process Clause. Moreover, even if he had, consideration of "the prejudicial impact of constitutional error in a state-court criminal trial" is conducted pursuant to the "substantial and injurious effect" standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993), not *Champman*'s "harmless beyond a reasonable doubt" standard, 386 U.S. at 24. *Fry v. Pliler*, 551 U.S. 112, 121–22 (2007). Indeed, the *Brecht* standard applies to harmless error analysis on habeas review "whether or not the state appellate court recognized the error and reviewed it for harmlessness" under the *Chapman* standard. *Id.* Thus, even if there were a constitutional error, it would be subject to a deferential harmless error analysis much like the Michigan Court of Appeals applied below.

C.

In his final habeas claim, Petitioner argues that he was sentenced on the basis of false information contrary to *Townsend v. Burke*, 334 U.S. 736 (1948). Petitioner was sentenced as a third habitual offender. He argues that one of the felonies used to establish his third habitual offender status, a conviction in Florida state court, was not a felony under Michigan law.

A sentence violates due process if it is based on "misinformation of constitutional magnitude[,]" *Roberts v. United States*, 445 U.S. 552, 556 (1980), or "extensively and materially false" information, which the defendant had no opportunity to correct, *Townsend*, 334 U.S. at 741. A sentence must be set aside where "the defendant can demonstrate that false information formed part of the basis for the sentence. The defendant must show, first, that the information before the

sentencing court was false, and, second, that the court relied on the false information in passing sentence." *United States v. Stevens*, 851 F.2d 140, 143 (6th Cir. 1988).

Petitioner's claim that the trial court improperly considered his Florida conviction a predicate felony for purposes of the habitual offender statute is a state law determination which is not cognizable on habeas review—it is not a question of fact, but a question of state law. "The determination by a state of what constitutes a prior felony conviction under its Multiple Offender Act presents no federal question." *United States ex rel. Nersesian v. Fay*, 239 F.Supp. 142, 143 (S.D. N.Y. 1965); *see Layton v. South Dakota*, 918 F.2d 739, 742 (8th Cir. 1990); *Jones v. Painter*, 140 F. Supp. 2d 677, 679 (N.D. W.Va.), aff'd, 20 F. App'x 187 (4th Cir. 2001). Accordingly, habeas relief is denied on this claim.

V.

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability ("COA") is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation omitted). In this case, reasonable jurists would not debate the Court's conclusions with regard to Petitioner's habeas claims. A COA will be denied

VI.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus [Dkt. # 1] is **DENIED WITH PREJUDICE**.

It is further **ORDERED** that a certificate of appealability is **DENIED**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: June 3, 2011

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on June 3, 2011.

s/Tracy A. Jacobs
TRACY A. JACOBS

---